IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KATE LYNN BLATT, | : | |
| Plaintiff, | : : : | |
| v. | : | CIVIL ACTION NO. 5:14-cv-4822-JFL |
| CABELA'S RETAIL, INC. | : : : | |
| Defendant. | : : | |

**SECOND STATEMENT OF INTEREST**
**OF THE UNITED STATES OF AMERICA**

The United States of America submits this Second Statement of Interest pursuant to 28 U.S.C. § 517,[1] and in accordance with the Court's Order of September 21, 2015 (ECF No. 62). The United States has an interest in this litigation because Plaintiff has raised a constitutional challenge to a provision of the Americans with Disabilities Act ("ADA"), specifically 42 U.S.C. § 12211(b)(1), which excludes "transsexualism . . . [and] gender identity disorders not resulting from physical impairments" from the ADA's definition of "disability" (the "GID Exclusion"). *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") (ECF No. 23); Notice of Constitutional Question (ECF No. 24). The United States suggests that resolution of the constitutional challenge to the GID Exclusion may be avoided as a matter of statutory construction. As

---

[1] 28 U.S.C. § 517 provides: "The Solicitor General, or any other officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." *See* 28 U.S.C. § 517.

explained below, under a reasonable interpretation of the statute, Plaintiff's gender dysphoria falls outside of the scope of the GID Exclusion because a growing body of scientific evidence suggests that it may "result[] from [a] physical impairment[]." This interpretation of the GID Exclusion would allow the Court to avoid the constitutional question, and thus is compelled by the doctrine of constitutional avoidance.[2]

It is well-settled that, if possible, courts should avoid resolving cases on constitutional grounds. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see also Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193, 204-06 (2009). "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005); *see also Siluk v. Merwin*, 783 F.3d 421, 434 (3d Cir. 2015) ("If a statute can be construed two ways, 'by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided,' our duty is to 'adopt the latter.'" (quoting *United States v. Edmonds*, 80 F.3d 810, 819 (3d Cir. 1996))).

The GID Exclusion excepts from the ADA's definition of "disability" those "gender identity disorders *not resulting from physical impairments*." 42 U.S.C. § 12211(b) (emphasis added). The statute does not define the italicized phrase, nor does the legislative history shed any light. But the applicable regulations broadly define the term "physical impairment" to mean

---

[2] The United States takes no position on the merits of Plaintiff's ADA claim, including whether plaintiff suffers "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102.

"[a]ny physiological disorder or condition" affecting various body systems including "neurological," "reproductive," or "genitourinary." 28 C.F.R. § 35.104. This definition is derived from the regulations implementing the Rehabilitation Act, the federal-sector analogue to the ADA. *See* 56 Fed. Reg. 35694, 35698 (July 26, 1991). Congress, in the ADA, required courts "to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act." *Bragdon v. Abbott*, 524 U.S. 624, 631-32 (1998) (citing 42 U.S.C. § 12201(a)). And those regulations, which were in effect at the time that Congress was considering the ADA, explain that the broad coverage of the term "physical impairment" was designed to include "any condition which is . . . physical but whose precise nature is not at present known," 42 Fed. Reg. 22676, 22686 (May 4, 1977), thus leaving room for new scientific developments.

This statutory and regulatory background makes clear that, as used in the GID Exclusion, the phrase "resulting from a physical impairment" broadly encompasses GIDs rooted in biology or physiology, even if the precise etiology is not yet definitively understood. In other words, the statute distinguishes between two categories of GIDs: those that have a physical cause and those that do not. Whether a particular GID falls within the scope of the GID Exclusion (and outside the scope of the ADA's protections) turns, then, on whether it "result[s] from [a] physical impairment[]" – that is, whether it has a physical basis.

As the *amici curiae* point out, "the burgeoning medical research underlying [gender dysphoria] points to a physical etiology." *See* Br. of Amici Curiae at 15 & n.57 (ECF No. 26-1) ("[N]umerous medical studies conducted in the past six years . . . 'point in the direction of hormonal and genetic causes for the in utero development of gender dysphoria.'" (quoting Christine Michelle Duffy, *The Americans with Disabilities Act of 1990 and the Rehabilitation*

*Act of 1973*, *in* GENDER IDENTITY AND SEXUAL ORIENTATION DISCRIMINATION IN THE WORKPLACE: A PRACTICAL GUIDE ch.16, at 16-72 to 16-74 & n.282  (Christine Michelle Duffy ed. Bloomberg BNA 2014))); *see also* Aruna Saraswat, MD, Jamie D. Weinand, BA, BS & Joshua D. Safer, MD, *Evidence Supporting the Biologic Nature of Gender Identity*, 21 ENDOCRINE PRACTICE 199, 199-202 (Feb.2, 2015) (providing a review of data in support of a "fixed, biologic basis for gender identity" and concluding that "current data suggest a biologic etiology for transgender identity"); E.S. Smith, J. Junger, B. Derntil & U. Habel, *The Transexual Brain – a Review of Findings on the Neural Basis of Transsexualism*, NEUROSCIENCE AND BIOBEHAVORIAL REVIEWS  (2015) (unedited manuscript, accepted for publication) (citing numerous studies and concluding that "[t]he available data from structural and functional neuroimaging-studies promote the view of transsexualism as a condition that has biological underpinnings").  While no clear scientific consensus appears to exist regarding the specific origins of gender dysphoria (*i.e.,* whether it can be traced to neurological, genetic, or hormonal sources), the current research increasingly indicates that gender dysphoria has physiological or biological roots.

This emerging scientific view must be assessed in light of the obligation to construe the ADA's protections broadly (and thus to treat the GID Exclusion narrowly).  Because "[t]he ADA is a remedial statute, designed to eliminate discrimination against the disabled in all facets of society, . . . it must be broadly construed to effectuate its purposes." *Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (internal quotations and citation omitted).  This principle is reflected in the language of the statute itself.  *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this

chapter."). And an exception – like the GID Exclusion – to a statute's "'general statement of policy' is sensibly read 'narrowly in order to preserve the primary operation of the [policy].'" *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (quoting *Commissioner v. Clark*, 489 U.S. 726, 739 (1989)). This approach is reinforced by the broad regulatory definition of "physical impairment" discussed above. *See Bragdon*, 524 U.S. at 632.

In light of the evolving scientific evidence suggesting that gender dysphoria may have a physical basis, along with the remedial nature of the ADA and the relevant statutory and regulatory provisions directing that the terms "disability" and "physical impairment" be read broadly, the GID Exclusion should be construed narrowly such that gender dysphoria falls outside its scope.[3] While the United States believes that this is the best interpretation of the statute, it is, at the very least, a reasonable one.[4] As such, the Court should adhere to the well-established doctrine of constitutional avoidance, should decline to address the constitutional

---

[3] Even assuming *arguendo* that current medical knowledge were to indicate that all known GIDs "result[] from physical impairments," that would not render the GID Exclusion meaningless within the context of the ADA. The statute continues to require that an asserted GID that does "not result[] from physical impairment" must be excluded from coverage. If our evolving understanding of GIDs has changed the scope of the Exclusion, that would reflect the ADA's own distinction between GIDs with a physical cause and those without such a cause – a distinction drawn by Congress and inherent in the language of the GID Exclusion itself.

[4] The legislative history does not address the question of when a GID should be understood as "resulting from [a] physical impairment[]," such that it would fall outside the scope of the GID Exclusion. The legislative history regarding the GID Exclusion comes from debate of the ADA on the floor of the U.S. Senate, but the version of the Exclusion being considered at that time did not include an exception for GIDs resulting from physical impairments. *See* 135 Cong. Rec. S10765-01, 1989 WL 183216, at *S10785 (Sept. 7, 1989). That language was added by the House late in the legislative process, with little explanation. *See* Pl.'s Opp'n at 14-15 (discussing the origin of the "not resulting from physical impairments" language and the absence of legislative history). Whatever Congress intended, "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) (explaining that while Congress might not have had "male-on-male sexual harassment in the workplace" in mind when enacting Title VII, such conduct still falls within the statute's plain text and thus within its purview).

challenge to the GID Exclusion, and should instead adopt this proposed construction, under which Plaintiff's gender dysphoria would not be excluded from the ADA's definition of "disability."[5]

Dated: November 16, 2015              Respectfully submitted,

                                              BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

SARAH LEVINE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Branch Director

JOSHUA E. GARDNER
Assistant Branch Director

/s/ Emily B. Nestler
EMILY B. NESTLER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Tel: (202) 616-8489
Fax: (202) 616-8470
emily.b.nestler@usdoj.gov

*Counsel for the United States of America*

---

[5] The United States respectfully reserves the right to file a statement of interest, or intervene to address the constitutionality of the GID Exclusion, in the event the Court determines that it cannot avoid reaching the issue.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on November 16, 2015, the foregoing United States' Second Statement of Interest was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                            */s/ Emily B. Nestler*

                                            EMILY B. NESTLER  
                                            Trial Attorney  
                                            United States Department of Justice, Civil Division