UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KATE LYNN BLATT,                         :
                                         :
        Plaintiff,                       :
                                         :
    v.                                   :    No. 5:14-cv-04822
                                         :
CABELA'S RETAIL, INC.,                   :
                                         :
        Defendant.                       :
_____

# **O P I N I O N**
**Defendant Cabela's Retail, Inc.'s Partial Motion to Dismiss, ECF No. 13 – Denied**
**Joseph F. Leeson, Jr.**                                                                   **May 18, 2017**
**United States District Judge**

      This action arises under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 (ADA). Presently before the Court is Defendant Cabela's Retail, Inc.'s Partial Motion to Dismiss. Cabela's seeks dismissal of Count III (ADA – Disability Discrimination, Failure to Accommodate) and Count IV (ADA – Retaliation) of Plaintiff Kate Lynn Blatt's Amended Complaint because Blatt has failed to state a claim upon which relief can be granted. For the reasons set forth below, Cabela's motion is denied.

      The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). This Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

      In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.*; *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8). While Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing *Twombly*, 550 U.S. at 555)); *see* Fed. R. Civ. P. 8(a)(2). For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations" are not required, *id.* at 678 (quoting *Twombly*, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," *id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557)).

According to the Amended Complaint, in October 2005, Blatt was diagnosed with "Gender Dysphoria, also known as Gender Identity Disorder," which substantially limits one or more of Blatt's major life activities, including, but not limited to, interacting with others, reproducing, and social and occupational functioning. Am. Compl. ¶ 10, ECF No. 13. Blatt alleges that shortly after she was hired by Cabela's in September 2006, Cabela's began to discriminate against her on the basis of her sex and her disability, in violation of Title VII of the Civil Rights Act and the ADA, and that Cabela's retaliated against her for opposing this

discrimination, also in violation of these statutes. *Id.* ¶¶ 11-32. Blatt further alleges that in February 2007, Cabela's terminated her employment based on her sex and disability. *Id.* ¶¶ 33-34.

The stated purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In pursuit of this purpose, Congress opted to define the scope of the statute's coverage by means of a flexible and broad definition of "disability," namely, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." *Id.* § 12102(1)(A). Standing in contrast to this broad definition of disability, there are a few exceptions to the ADA's coverage. The provision at issue in this case, 42 U.S.C. § 12211, excludes from ADA coverage approximately one dozen conditions, including gender identity disorders.

Cabela's contends that § 12211's reference to gender identity disorders applies to Blatt's condition and that the provision therefore excludes her condition from the ADA's scope. Blatt responds that, if that is the case, then § 12211's exclusion of gender identity disorders violates her equal protection rights.

The constitutional-avoidance canon prescribes that "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that [the court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *United States v. Witkovich*, 353 U.S. 194, 201 (1957) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Thus, if there is a "fairly possible" interpretation of § 12211 that permits the Court to avoid the constitutional question Blatt has raised, the Court must adopt that interpretation. As explained below, there is indeed such an interpretation, namely, one in which the term gender identity disorders is read narrowly to refer to only the condition of identifying with a different gender, not to encompass (and therefore exclude from ADA protection) a condition like Blatt's gender dysphoria, which goes beyond merely identifying with a different gender and is characterized by clinically significant stress and other impairments that may be disabling.[1]

Beginning with the text of the provision, the exceptions listed in § 12211 can be read as falling into two distinct categories: first, non-disabling conditions that concern sexual orientation or identity, and second, disabling conditions that are associated with harmful or illegal conduct.[2]

---

[1] By contrast, Cabela's suggested interpretation aligns with the term's definition in the revised third edition of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (the current edition at the time of the drafting of the ADA), where the term gender identity disorders is defined as broadly encompassing any disorder essentially marked by "an incongruence between assigned sex . . . and gender identity." *See Diagnostic and Statistical Manual of Mental Disorders* 71 (3d ed. revised 1987).

[2] The first category includes homosexuality and bisexuality, *see* 42 U.S.C. § 12211(a), whereas the second category includes pedophilia, exhibitionism, voyeurism, compulsive gambling, kleptomania, pyromania, and "psychoactive substance use disorders resulting from current illegal use of drugs," *see* 42 U.S.C. § 12211(b).

The legislative history shows that Congress discussed the § 12211 exclusions in terms of these two distinct categories. First, there was a concern among some members of Congress that the bill would include "sexual

If the term gender identity disorders were understood, as Cabela's suggests, to encompass disabling conditions such as Blatt's gender dysphoria, then the term would occupy an anomalous place in the statute, as it would exclude from the ADA conditions that are actually disabling but that are not associated with harmful or illegal conduct. But under the alternative, narrower interpretation of the term, this anomaly would be resolved, as the term gender identity disorders would belong to the first category described above.

This narrower interpretation also comports with the mandate of the Court of Appeals for the Third Circuit that the ADA, as "a remedial statute, designed to eliminate discrimination against the disabled in all facets of society, . . . must be broadly construed to effectuate its purposes." *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208-09 (3d Cir. 2008) (quoting *Kinney v. Yerusalim*, 812 F. Supp. 547, 551 (E.D. Pa. 1993)). Thus, any exceptions to the statute, such as those listed in § 12211, should be read narrowly in order to permit the statute to achieve a broad reach. *See Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195 (3d Cir. 2015) ("Following traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly." (quoting *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006))). This interpretation is also consistent with the legislative history of § 12211, which reveals that Congress was careful to distinguish between excluding certain sexual identities from the ADA's definition of disability, on one hand, and not excluding disabling conditions that persons of those identities might have, on the other hand.[3]

In view of these considerations, it is fairly possible to interpret the term gender identity disorders narrowly to refer to simply the condition of identifying with a different gender, not to exclude from ADA coverage disabling conditions that persons who identify with a different gender may have —such as Blatt's gender dysphoria, which substantially limits her major life activities of interacting with others, reproducing, and social and occupational functioning. Because this interpretation allows the Court to avoid the constitutional questions raised in this

---

preference as a disability or a protected class of individuals." *See The Americans with Disabilities Act of 1989: Hearing on H.R. 2273 Before the Subcomms. on Emp't Opportunities & Select Educ. of the H. Comm. on Educ. & Labor* 101 Cong. 14 (1989) (statement of Rep. Bartlett, Member, H. Comm. on Education and Labor). Second, there was a separate concern that the ADA "could protect individuals from discrimination on the basis of a variety of socially unacceptable, often illegal, behavior if such behavior is considered to be the result of a mental illness," including such conditions as "compulsive gambling, pedophilia, and kleptomania." 135 Cong. Rec. S10765-01, S10796 (daily ed. Sept. 7, 1989) (statement of Sen. Rudman), 1989 WL 183216.

[3] For example, during the Senate debate, in response to inquiries about the proposed bill's coverage of homosexuality, HIV, and AIDS, Senator Thomas Harkin, a sponsor of the bill, clarified that although homosexuality itself would not meet the definition of a disability under the ADA, that would not prevent a person who is gay from receiving coverage under the statute if the person had a disability. *See* 135 Cong. Rec. S10765-01, S10767 (daily ed. Sept. 7, 1989), 1989 WL 183216. Similarly, the House Judiciary Committee commented that "[i]ndividuals who are homosexual or bisexual and are discriminated against because they have a disability, such as infection with the Human Immunodeficiency Virus, are protected under the ADA," and the Committee "specifically rejected amendments to exclude homosexuals with certain disabilities from coverage." H.R. Rep. 101-485, at 76 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 499.

case, it is the Court's duty to adopt it. Accordingly, Blatt's condition is not excluded by § 12211 of the ADA, and Cabela's motion to dismiss Blatt's ADA claims on this basis is denied.

Cabela's acknowledges that its motion to dismiss Blatt's disability discrimination claims rests on the Court's interpretation of § 12211. With respect to Blatt's ADA retaliation claim, however, Cabela's contends that even if Blatt has alleged a disability covered by the ADA, she has nevertheless failed to allege that she engaged in protected activity by opposing disability discrimination in her workplace. Specifically, Cabela's contends that "the Amended Complaint contains allegations that [Blatt] reported conduct that she alleges was discriminatory based on *her sex*, not any disability." Def.'s Mem. Supp. Mot. 10, ECF No. 13-1. Further, Cabela's contends that Blatt has failed to allege that she engaged in protected activity by asking for an accommodation for a disability or that Cabela's took an adverse employment action against her because of her alleged request for an accommodation.

Blatt responds that her Amended Complaint fairly alleges that she continually reported to her superior that she was subject to degrading and discriminatory comments on the basis of her disability, that she requested a female nametag and uniform and use of the female restroom as accommodations for her disability, and that as a result of requesting these accommodations she was subjected to a "pattern of antagonism" prior to her termination. Cabela's replies that Blatt's allegations that she was temporarily forced to wear an inaccurate name tag and was not allowed to use the female restroom do not amount to a "pattern of antagonism."

To state an ADA retaliation claim, Blatt must allege that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Ordinarily, a causal connection may be shown by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). A "pattern of antagonism" is a "consistent and continuous" pattern of conduct, which can include a "'constant barrage of written and verbal warnings'" as well as "'disciplinary action.'" *See Bartos v. MHM Corr. Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011) (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)).

Here, Blatt has plausibly alleged that she engaged in protected activity by reporting discrimination and requesting accommodations for her disability. She has also plausibly alleged that she was subjected to a "pattern of antagonism" as a result of this activity, including Cabela's allegedly intentional and repeated refusal to provide her with a correct name tag.

The Court, accepting the allegations of the Amended Complaint as true, as it is required to do at this stage of the case, denies Cabela's request to dismiss Count III and Count IV of the Amended Complaint for the reasons set forth above. The case will be permitted to proceed to discovery, inter alia, on the facts that may or may not exist to support the claims and defenses set forth in the pleadings. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge